16-1024-cr
*United States v. Serrano*


## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of August, two thousand seventeen.

PRESENT:
  AMALYA L. KEARSE,
  JOHN M. WALKER, Jr.,
  PETER W. HALL,
        *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

        *Appellee,*

        v.                                                                 16-1024-cr

ANDY SERRANO,

        *Defendant-Appellant,*

_____

For Appellant:                          JAMES M. BRANDEN, Esq., New York, NY.

For Appellee:                                   REBEKAH A. DONALESKI AND BRIAN R.
                                                BLAIS, Assistant United States
                                                Attorneys, *for* Preet Bharara, United
                                                States Attorney for the Southern
                                                District of New York.

Appeal from a judgment of the United States District Court for the Southern

District of New York (Preska, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is

**AFFIRMED**.

Following a bench trial before then-Chief Judge Preska, Defendant-Appellant

Andy Serrano was found guilty of being a felon in possession of a firearm in

violation of 18 U.S.C. § 922(g)(1). He challenges a pre-trial ruling by Judge Duffy

denying his motion to suppress evidence of the firearm and his post-arrest

statement. We assume the parties' familiarity with the underlying facts, procedural

history, and issues on appeal.

On appeal from a district court's ruling on a motion to suppress evidence, "we

review legal conclusions *de novo* and findings of fact for clear error." *United States*

*v. Freeman*, 735 F.3d 92, 95 (2d Cir. 2013). We also review *de novo* mixed questions

of law and fact. *Id.* (citing *United States v. Lucky*, 569 F.3d 101, 105–06 (2d Cir.

2009)). We "pay special deference to the district court's factual determinations

going to witness credibility." *United States v. Jiau*, 734 F.3d 147, 151 (2d Cir.

2013).

2

Serrano first contends that the district court erred in determining that reasonable suspicion existed to stop him. He asserts that he was seized within the meaning of the Fourth Amendment the moment police first approached him and that such a seizure was not supported by reasonable suspicion because it was based solely on an unreliable, anonymous tip. Serrano overlooks the fact that the district court found that he was not seized within the meaning of the Fourth Amendment until he was arrested and that there was probable cause for the arrest.[1]

For the purposes of the Fourth Amendment, a police encounter becomes a seizure when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "Not every encounter between a police officer and an individual is a seizure implicating the fourth amendment's protections." *United States v. Lee*, 916 F.2d 814, 819 (2d Cir. 1990). Indeed, "a police officer is free to approach a person in public and ask a few questions; such conduct, without more, does not constitute a seizure." *Id.* (citing *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion of White, *J.*)); *see also United States v. Peterson*, 100 F.3d 7, 11 (2d Cir. 1996). In determining whether a seizure has occurred, this Court considers "the overall coercive effect of the police conduct." *Lee*,

---

[1] We note that rather than challenge whether probable cause existed justifying his arrest, Serrano contends that the officers lacked reasonable suspicion to briefly detain and question him. Because we conclude that Serrano was not seized until the order was given to arrest him, however, we need not entertain this argument. In any event, because the decision to arrest Serrano was not made until *after* the officers observed the gun, at that time—because they believed (in light of the anonymous tip) that the gun belonged to both Christina Colon (Serrano's associate) and Serrano— the officers had probable cause for Serrano's arrest.

916 F.2d at 819. "Examples of circumstances that might indicate a seizure . . . would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554.

Here, the district court did not err in concluding that Serrano was not seized within the meaning of the Fourth Amendment until Officer Santiago was directed to arrest him. At the suppression hearing, Serrano testified that he was stopped when he was walking into a store and an officer—Officer Santiago—tapped him on the shoulder, directed him out of the store, and took him to the side of the building, where he was questioned. The district court found this testimony not credible, based in part on the fact that Serrano's affidavit in support of his motion to suppress did not include such an assertion and in part on the testimony of Officers Santiago and McLaurin that when they first saw Serrano and approach him, Serrano was standing by a fence. The district court held that the officers' approach to Serrano and their ensuing conversation with him in those circumstances— without touching him, or displaying weapons, or receiving any of his possessions or identification, or giving him any orders—was not a seizure within the meaning of the Fourth Amendment. We agree. Up to that point, the officers had simply asked Serrano for his identification and what he was doing in the neighborhood. This type of interaction between law enforcement and Serrano is akin to a casual, consensual encounter and is not a Fourth Amendment seizure. *See United States v. Glover*, 957

4

F.2d 1004, 1009 (2d Cir. 1992) (concluding that it was "plain that no seizure had occurred" where police approached the defendant in a public place and, "in a non-threatening manner, asked [the defendant] certain questions, requested identification, and asked whether [he] would consent to have his bags searched for narcotics" while not displaying any "weapons . . . and there was no physical contact between the officers and [the defendant]"). Under the circumstances presented here, a reasonable person would have felt free to terminate the encounter and leave. *Cf. Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions.").

Serrano next argues that the district court erroneously concluded that he lacks standing to challenge the search of the handbag containing the gun. "When considering a claimed violation of Fourth Amendment rights, the burden is on the defendant to establish that his own rights under the Fourth Amendment were violated." *United States v. Paulino*, 850 F.2d 93, 96 (2d Cir. 1988). "In order to prevail on a contention that a search violated the Fourth Amendment, an accused must show that he had a legitimate expectation of privacy in a searched place or item." *United States v. Rahme*, 813 F.2d 31, 34 (2d Cir. 1987). While ownership and possession of the searched item are important considerations in determining whether a legitimate expectation of privacy exists, neither is dispositive. *Id.* "The absence of possession, however, may often result in a finding that an accused had no legitimate expectation of privacy because the absence of a right to exclude others

5

from access is an important factor militating against a legitimate expectation of privacy." *Id.*

Here, Serrano failed to demonstrate that *his rights* were violated by the search of the handbag. First, as the district court noted, Serrano's evidence and claims concerning ownership of the bag are thoroughly inconsistent and difficult to credit. In his affidavit in support of his motion to suppress, Serrano repeatedly referred to the handbag as though it belonged to Colon. In fact, he even directly referred to the handbag as "Christina's." By using language inconsistent with ownership, moreover, Serrano's affidavit implies that he was deliberately attempting to distance himself from the handbag. While Serrano contends that although he may have been "non-committal on the ownership of the [handbag] containing the firearm" in his sworn affidavit supporting his motion to suppress and that he "unequivocally stated that he owned" the bag at the hearing on his motion, we nonetheless are required to afford great deference to the district court's credibility determinations. *See Jiau*, 734 F.3d at 51. Because the court's factual findings concerning ownership are largely based on Serrano's lack of credibility and he has not demonstrated that such factual determinations are clearly erroneous, we will not disturb the district court's conclusions in this regard. The district court properly concluded that Serrano did not establish ownership of the bag.

Second, not only did Serrano lack ownership of the bag, but he did not otherwise manifest an expectation of privacy in it. In particular, Serrano gave the bag to Colon and was observed walking away from the bag and Colon when the

6

police arrived.  *See, e.g., Rawlings v. Kentucky*, 448 U.S. 98, 105–06 (1980) (holding that defendant lacked standing to challenge search of friend's purse that he had placed narcotics in because he had not demonstrated a legitimate expectation of privacy in the purse).  Considered in conjunction with Serrano's lack of ownership, the district court properly determined that Serrano had not established a legitimate expectation of privacy in the handbag.  Serrano thus lacks standing to contest the search of the bag.

Finally, Serrano contends that his post-arrest statement should have been suppressed as fruit of an illegal search and seizure.  Because Serrano was not stopped in violation of the Fourth Amendment, however, his post-arrest statement cannot be considered tainted fruit.  *Cf. United States v. Thompson*, 35 F.3d 100, 105 (2d Cir. 1994) (discussing that evidence "indirectly obtained through a Fourth Amendment violation may be excludable as 'fruit of the poisonous tree'" (quoting *Wong Sun v. United States*, 371 U.S. 471, 484–87 (1963))).

We have considered all of Serrano's remaining arguments on appeal and find them to be without merit.  For the foregoing reasons, the district court's order denying his motion to suppress and the judgment of conviction are **AFFIRMED**.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk